UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRENCE BARNES, | ) | Case No. 1:10CV2597 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MARGARET BRADSHAW, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

Petitioner, Terrence Barnes ("Petitioner"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas convictions for felonious assault in violation of Ohio Revised Code ("ORC") §§ 2903.11 and kidnapping in violation of ORC §§ 2903.11(A).  *Id.*; see also ECF Dkt. #11-1 at 383[1].

On September 27, 2010, Respondent, Margaret Bradshaw, Warden of Richland Correctional Institution, filed an answer/return of writ.  On May 4, 2011, Petitioner filed a traverse.  ECF Dkt. #s 11, 16.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

## I.    SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1);

---

[1]  Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

*Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

> M.W. testified that on the evening of June 22, 2003, she and Barnes went to a party, and Barnes became highly intoxicated.  After they returned home, Barnes left to purchase more alcohol.  M.W. entered their shared apartment and locked the door to keep him out.  When Barnes returned, she opened the door because he promised not to hurt her.  Barnes entered the apartment, and M.W. ran to her bedroom and locked the door behind her. Barnes kicked in the bedroom door, and M.W. ran to the window to scream for help.  Barnes grabbed her by the hair, bit her face, and beat her.  He dragged her to the kitchen and stripped off her clothing to prevent her escape.  He threatened to kill her, and she begged for her life.  Barnes bit her several more times, choked her, and continued to beat her.
>
> Barnes then dragged M.W. to the bathroom by her hair and made her stay there while he relieved himself.  He observed that her injuries appeared severe and feared that he would go to jail if anyone saw her, so he prohibited her going to work for the next few days.  M.W. testified that Barnes took her to the bedroom and raped her.  Before Barnes went to sleep, he tied her hand to his hand with a tee shirt so that she could not escape while he was sleeping. Nonetheless, after Barnes fell asleep, M.W. escaped and arranged to have a friend pick her up.  After reporting the incident to police, M.W. obtained treatment at a local hospital.

ECF Dkt. #11-3 at 203-204.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

In its May 2003 term, the Cuyahoga County, Ohio Grand Jury indicted Petitioner on rape in violation of ORC § 2907.02 with a notice of prior conviction for robbery and a repeat violent offender specification ("RVO"); felonious assault in violation of ORC § 2903.11 with a notice of prior conviction for robbery and a RVO specification; kidnapping in violation of ORC  § 2905.01 with a notice of prior conviction, sexual motivation specification and RVO specification; and domestic violence in violation of ORC § 2919.25.  ECF Dkt. #11-1 at 179-182.

#### 1.     Guilty Plea

In September 2003, Petitioner appeared in court with counsel and the prosecution.  ECF Dkt. #11-1 at 188.  The trial court granted the prosecution's motion to amend the rape charge to gross sexual imposition ("GSI") under ORC 2907.05(A)(1) and delete the notice of prior conviction and RVO specification.  *Id.*  The trial court further granted the prosecution's motion to amend the

felonious assault charge to delete the notice of prior conviction and RVO specification.  *Id.*
Petitioner thereafter entered a guilty plea to the amended GSI and felonious assault charges.  *Id.*
The trial court found Petitioner guilty of those crimes and nolled the remaining charges.  *Id.*  The
court sentenced Petitioner to eighteen months of imprisonment on the GSI and eight years on the
felonious assault conviction, ordering the sentences to run concurrently.  *Id.*

### 2. __Motion to Withdraw Guilty Plea__

On February 22, 2005, Petitioner, pro se, filed a motion for leave to withdraw his guilty plea
pursuant to Rule 32.1 of the Ohio Rules of Criminal Procedure.  ECF Dkt. #11-1 at 189.  Petitioner
contended that the court coerced his plea and he had the ineffective assistance of counsel.  *Id.*  On
March 11, 2005, the trial court denied the motion.  *Id.*

### 3. __Delayed Direct Appeal__

On July 5, 2005, Petitioner, pro se, filed a motion for leave to file a delayed appeal and a
notice of appeal to the Eighth District Court of Appeals.  ECF Dkt. #11-1 at 254, 270.  The appellate
court granted Petitioner's motion for leave to file a delayed appeal and Petitioner, through counsel,
filed an appellate brief.  *Id.* at 281-301.  Petitioner, pro se, also filed a brief with supplemental
assignments of error.  *Id.* at 330-340.

On July 20, 2006, the appellate court struck Petitioner's pro se brief from the record due to
his noncompliance with Rule 16(A) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #11-1 at
359.  The appellate court gave Petitioner thirty days to file a conforming brief.  *Id.*

On November 9, 2006, the Ohio appellate court found that Petitioner's guilty plea was not
knowingly, intelligently and voluntarily made because the trial court did not substantially comply
with Rule 11(C) of the Ohio Rules of Criminal Procedure because the court advised Petitioner that
he was subjected to a mandatory five-year term of post-release control following prison after, rather
than before, accepting his plea.  ECF Dkt. #11-1 at 365.  The court therefore vacated Petitioner's
conviction and sentence.  *Id.* at 366.

### 4. __Jury Trial__

On August 3, 2007, the State of Ohio filed a notice and request to use other acts evidence
pursuant to Rule 404(B) of the Ohio Rules of Evidence.  ECF Dkt. #11-1 at 377.  Counsel for

Petitioner filed a motion to strike the State's attempt to use other acts evidence.  *Id.* at 381.  On October 29, 2007, the jury found Petitioner not guilty of rape and not guilty on the sexual motivation specifications, but found him guilty of felonious assault and kidnapping.  *Id*. at 383.  The prosecution dismissed the RVO specifications prior to trial and nolled the domestic violence charge. *Id*.

The trial court sentenced Petitioner to six years on the felonious assault conviction and eight years on the kidnapping conviction, with the sentences to run consecutively.  ECF Dkt. #11-1 at 383.

### 5.   **Delayed Direct Appeal**

On January 25, 2008, Petitioner, pro se, filed a motion for leave to file a delayed appeal. ECF Dkt. #11-2 at 407.  The appellate court denied Petitioner's motion for leave and dismissed his appeal sua sponte.  *Id*. at 410.

On February 20, 2008, Petitioner, pro se, filed a motion for reconsideration pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #11-2 at 412.  On February 21, 2008, the appellate court denied Petitioner's motion for reconsideration.  *Id.* at 416.

Petitioner did not file an appeal to the Supreme Court of Ohio.

### 6.   **Petition to Vacate or Set Aside Sentence**

On April 14, 2008, Petitioner, pro se, filed a petition to vacate or set aside his sentence pursuant to ORC 2953.21.  ECF Dkt. #11-2 at 417.  Petitioner raised the following claims:

1.   An indigent defendant is entitled to appointment of counsel to assist him on his first appeal.

2.   The inadequate representation that Petitioner received prior to and during trial fell below an objective reasonable standard, violating Petitioner's rights to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where counsel actively represented conflicts of interest, failed to investigate the police misconduct by Detective Duane R. Funk, purposely withheld documents from Defendant, refused to bring forth exhibits, and knowingly lied to Court about exhibits.  Counsel acted in bad faith while engaging in behavior involving moral turpitude, dishonesty, deceit and misrepresentation.

3.   The presence of a biased judge violated the Petitioner's right to due process, a fair trial and effective assistance of counsel as guaranteed by the U.S. Constitution and the Ohio Constitution and Equal Opportunity.

4.   The prosecutor committed Brady violation and knowingly withheld materially favorable evidence from the defense and knowing used perjured

-4-

testimony, all of which rendered the proceedings fundamentally unfair.  The evidence withheld and the perjured testimony used include the following:

(1)  The testimony of Mary Williams which was clearly manufactured and orchestrated and consisted of endless lies.

(2)  The typed for taped interview of Mary Williams and Detective Duane R. Funk transcribed by Jane Reidy on 6-29-03 at 1000 hours.  (The prosecutor submitted an altered tape of this interview.)

(3)  The initial statement that Mary Williams wrote.

(4)  The initial police report by Ptl. E. Burgett #705-CAR 4897 at 0433 hrs. completed at 0500 hours where Petitioner clearly refused to make statement and refused Miranda rights waiver.

(5)  Page one of discharge instructions from Southwest General Health Center on 6-22-03 where it clearly states sexual assault.

(6)  Page one of one of final report - CAT scan - CT Brain/Head without contrast from Southwest General Health Center.

(7)  Page one of two continued of final report. Diagnostic Radiology - cervical spine.

(8)  The photo's[sic] taken by Detective Duane R. Funk of Petitioner's bite mark to the chest and bruise to the head.

5.  The failure of the clerk to maintain the completeness, accuracy, and integrity of the court files prejudiced the Petitioner.

*Id*. at 421-432.

On May 6, 2008, the trial court denied Petitioner's motion to vacate or set aside his sentence. ECF Dkt. #11-2 at 456.

On June 2, 2008, Petitioner, pro se, filed a notice of appeal of the denial of his motion to vacate/set aside sentence.  ECF Dkt. #11-2 at 457.  On August 4, 2008, the Ohio appellate court sua sponte dismissed the appeal for his failure to file the record as required by the Ohio Rules of Appellate Procedure. *Id.* at 480.

On September 8, 2008, Petitioner, through counsel, filed a delayed application for reconsideration pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #11-2 at 481.  On September 19, 2008, the Ohio appellate court denied Petitioner's delayed application, holding that there is no delayed appeal from the denial of a post-conviction relief petition as that petition is civil in nature.  *Id.* at 488.

On September 29, 2008, Petitioner, through counsel, filed an application for reconsideration pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #11-2 at 489.  On October 16, 2008, the Ohio appellate court again denied Petitioner's application.  *Id.* at 499.

### 7.    **Delayed Direct Appeal**

On December 8, 2008, Petitioner, through counsel, filed a notice of appeal and motion for leave to file a delayed appeal in the Eighth District Court of Appeals of Ohio seeking to appeal from the October 29, 2007 judgment of his conviction.  ECF Dkt. #11-2 at 500.  On February 27, 2009, Petitioner's counsel filed a motion for access to a copy of a competency evaluation of Petitioner and moved to supplement the record with this evaluation.  *Id*. at 574.  The appellate court granted the motion.  *Id*. at 577.  Petitioner filed a pro se motion to supplement the appellate record with exhibits that he claimed his defense counsel did not submit at trial because she believed they were frivolous.  *Id.* at 579.  The appellate court denied this motion.  *Id.* at 582.

On May 4, 2009, Petitioner, through counsel, filed his appellate brief asserting the following assignments of error:

> I.    Mr. Barnes was denied a fair trial when the State was permitted to introduce testimony about prior bad acts not at issue in the indictment and when the jury was given no limiting instruction about other-acts evidence.  Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.
>
> II.   A trial judge commits misconduct and undermines a defendant's constitutional right to due process and a fair trial by making inappropriate and prejudicial comments during trial and following the verdict.  Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.
>
> III.  The trial court violated Mr. Barnes' constitutional right to due process in sentencing him to a greater term of imprisonment based on his choice to go to trial following reversal of his conviction on a plea.  Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.
>
> IV.   Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when she failed to request a limiting instruction for other-acts evidence, and failed to object to the trial judge's prejudicial remarks and Mr. Barnes' vindictive sentence.  *Strickland v. Washington* (1984), 466 U.S. 668.

ECF Dkt. #11-3 at 584-585.  Petitioner sought to file supplemental assignments of error and

supporting authorities pro se and the Ohio appellate court granted his motion.  *Id*. at 762.  The supplemental assignments of error presented were:

I. The inadequate representation that Appellant received prior to and during trial fell below an objective reasonable standard, violating Appellant's Rights to Effective Assistance of Counsel under the 6th Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where Counsel actively represented Conflicts of Interest, failed to investigate the Police Misconduct by Detective Duane R. Funk, purposely withheld documents from Appellant, refused to bring forth exhibits, and knowingly lied to the Court about exhibits.  Counsel acted in bad faith while engaging in behavior involving moral turpitude, dishonesty, deceit and misrepresentation.

II. Prosecutor committed misconduct and Brady violation by knowingly withholding materially favorable evidence from the defense and knowingly used perjured testimony, all of which rendered the proceedings fundamentally unfair.

III. The Trial Judge committed structural error.

IV. The Appellant's Conviction is Against the Manifest Weight of the Evidence.

V. The failure of the Clerk to maintain the completeness, accuracy and integrity of Court Files prejudices the Appellant to obtain a proper Appeal.

*Id*. at 768.  On May 6, 2010, the Ohio appellate court affirmed the trial court's judgment and sentence, addressing only those assignments of error presented in the brief drafted by Petitioner's counsel as Petitioner failed to serve his supplemental appellate brief on the State.  *Id*. at 783-803.

## 8. Rule 26(A) Motion for Reconsideration

On April 23, 2010, Petitioner, through counsel, filed an application for reconsideration pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #11-4 at 808.  In this application, Petitioner asserted that the appellate court failed to consider his other criminal case for which he was eventually acquitted when the court found that the sentence the trial court imposed in the instant case was not harsher than his prior sentence and was not motivated by the trial court's vindictiveness.  *Id*. at 810-811.

On May 6, 2010, the Ohio appellate court denied the application, referring to its prior opinion finding that Petitioner's prior case was not part of this appeal and had not been resolved at the time of Petitioner's sentencing in the instant case.  ECF Dkt. #11-4 at 818.

**9**.        **Supreme Court of Ohio**

On June 11, 2010, Petitioner pro se filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #11-4 at 819.  In his memorandum in support of jurisdiction, Petitioner pro se asserted the following propositions of law:

Proposition of Law No. I:

Mr. Barnes was denied a fair trial when the State was permitted to introduce testimony about prior bad acts not at issue in the indictment and when the jury was given no limiting instruction about other-acts evidence, Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution.

Proposition of Law No. II:

A trial judge commits misconduct and undermines a defendant's constitutional right to Due Process and a fair trial by making inappropriate and prejudicial comments during trial and following the verdict.  Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution.

Proposition of Law No. III:

The trial court violated Mr. barnes' [sic] constitutional right to Due Process in sentencing him to a greater term of imprisonment based on his choice to go to trial following reversal of his conviction on a plea.  Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution.

Proposition of Law No. IV:

Trial counsel provided Ineffective Assistance of Counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when she failed to request a limiting instruction for other-acts evidence and failed to object to the trial judge's prejudicial remarks and Mr. Barnes' vindictive sentence.  *Strickland v. Washington*, 466 U.S. 668.

Proposition of Law No. V:

Appellant received Ineffective Assistance of Appellate Counsel when she failed to raise the issue of the incomplete transcript, the failure of the clerk to maintain the completeness, accuracy and integrity of the court files.  This was prejudiced to the Appellant to receive an effective review pursuant to Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

-8-

> Proposition of Law No. VI:
>
> Appellant received Ineffective Assistance of Appellate Counsel when she and Trial Counsel both failed to make the Preliminary Hearing part of the record for trial and appellate review.
>
> Proposition of Law No. VII:
>
> Appellant received Ineffective Assistance of Appellat[sic] Counsel when she failed to mention the Ineffective Assistance of Trial Counsel under the Federal Due Process of Law and under the Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution
>
> Proposition of Law No. VIII:
>
> Appellant received Ineffective Assistance of Appellant[sic] Counsel when counsel failed to challenge the indictment, the manifest weight of evidence and the conveyance of improper jurisdiction to Cuyahoga County under the Federal Due Process of Law.

*Id.* at 822-823.  On August 25, 2010, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  *Id.* at 879.

### **10**.  **Petition to Vacate or Set Aside Sentence Pursuant to R.C. 2953.21**

Before the Ohio appellate court overruled his delayed direct appeal and denied his application for reconsideration, and before the Supreme Court of Ohio denied him leave to appeal, Petitioner pro se filed in the trial court a petition to vacate or set aside his sentence pursuant to ORC § 2953.21.  ECF Dkt. #11-4 at 880.  Petitioner asserted that constitutional errors occurred outside of the record and an evidentiary hearing was necessary in order to explain the special circumstances warranting relief.  *Id.*  He presented the following two arguments:

> (1)  Petitioner did not enjoy the right to effective assistance of trial counsel pursuant to the Sixth Amendment under the United States Constitution and Article I, Section 10 of the Ohio Constitution and was thus prejudiced by this lack of effective assistance.
>
> (2)  The Prosecutor committed Brady Violation by knowingly failing to turn over exculpatory evidence and presenting an altered tape during trial.

*Id.* at 881.  On September 3, 2009, the trial court denied Petitioner's petition.  *Id.* at 885.

Petitioner pro se filed a notice of appeal from this decision on October 15, 2009 and

-9-

on November 5, 2009, the Ohio appellate court dismissed his appeal because he failed to file a timely appeal.  ECF Dkt. #11-4 at 910.

### 11. <u>Rule 26(B) Application for Reopening</u>

On June 21, 2010, Petitioner pro se filed an application for reopening in the Ohio appellate court pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #11-4 at 911.  Petitioner asserted that his appellate counsel on direct appeal was ineffective and he identified the following "Assignments of Error Not Considered on Appeal Due to Counsel's Ineffectiveness:"

1. Did the lack of complete transcript and the failure of the Clerk to maintain the completeness, accuracy, and integrity of the Court files prejudice the Appellant and severely infect the Appellant for a[sic] effective review of his direct appeal.

2. Did the Defendant-Appellant receive Due Process of Law when the Trial Counsel and Appellate Counsel both failed to make the Preliminary Hearing part of the Record for Trial and Appeal?

3. Appellate Counsel erred when she failed to mention the Ineffective Assistance of Trial Counsel.

4. The Prosecutor committed Brady Violation and knowingly withheld materially favorable evidence from the defense and knowingly used perjured testimony all of which rendered the proceedings fundamentally unfair the evidence withheld and the perjured testimony used include the following:

   1. The testimony of M.W. which was clearly manufactured and orchestrated and consisted of endless lies.

   2. The transcribed form of the taped interview of M.W. and Detective Duane R. Funk transcribed by Jane Reidy on 6/24/03 at 1000 hour. (The Prosecutor submitted an altered tape of this interview at Trial.).

   3. The initial statements that M.W. wrote in her own handwriting that was contradictory to her Trial testimony.

   4. The initial police report by PTL. E. Burgett that also contained contradictory statements made by M.W.

   5. Page one of discharge instructions from Southwest General Health Center on 6/22/03 where it clearly states Sexual Assault.

   6. Page one of one of final report CAT-SCAN, BRAIN/HEAD without contrast from Southwest General Health Center.

-10-

       7.      Page one of two continued of final report.  Diagnotice[sic] Radiology - Cervical Spine.

       8.      Statements made by M.W. that were also contradictory to Trial testimony to agents at Southwest General Health Center.

       9.      Photos taken by Detective Duane R. Funk of Defendant-Appellant's bite mark to the chest and bruise to the head.

5.      Was the Due Process Clause of the Fourteenth Amendment violated when Defendant received a more harsher sentence.

6.      "Judicial Bias," as may constitute Structural Error, is a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or attorney, with the formation of a fixed anticipatory judgment on the part of the Judge, as contradisinguished[sic] from an open state of mind which will be governed by the law and facts.

7.      The conviction was against the Weight of the Evidence and Jurisdiction was improperly conveyed to Cuyahoga County.

*Id.* at 911-925.

On January 12, 2011, the Ohio appellate court issued an opinion addressing Petitioner's assertions and denying his application for reopening. ECF Dkt. #11-4 at 974-983.

On February 28, 2011, Petitioner pro se filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #11-4 at 984. In his pro se memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

PROPOSITION OF LAW NO I:

Where the lack of complete transcript and the failure of the Clerk to maintain the completeness, accuracy and integrity of the Court files prejudiced the Appellant and severely infected the Appellant for an effective review it cannot be said that the Appellant has received Due Process of Law as guaranteed by the Ohio Constitution Section 16, Article I and the Fifth and Fourteenth Amendments of the United States Constitution nor Federal Due Process of Law.

PROPOSITION OF LAW NO II:

Appellant's Trial Counsel and Appellate Counsel's performance fell below the objective standard of reasonableness where both failed to make the preliminary hearing part of the record for trial and appeal. This was a violation of Aopellant's[sic] Constitutional Rights to a fair trial and effective Appellate Review, Ohio Constitution Section 16, Article I, the Fifth and Fourteenth Amendments of the United States Constitution, and Federal Due Process of Law.

-11-

PROPOSITION OF LAW NO III:

Appellate Counsel erred in violation of Strickland when she failed to submit numerous critical documents that Trial Counsel purposely neglected to submit for trial and knowingly lying in open court about said documents.  A violation of Ohio Constitution, Section 16, Article I, and the United States Constitution, Fifth and Fourteenth Amendments, as well as in violation of Federal Due Process of Law.

PROPOSITION OF LAW NO IV:

Prosecutor committed Brady Violations and knowingly withheld materially favorable evidence from the defense and knowingly used perjured testimony all of which rendered the proceedings fundamentally unfair in violation of Section 16, Article I, Ohio Constitution, Fifth and Fourteenth Amendments of the United States Constitution, and in violation of Federal Due Process of Law.

PROPOSITION OF LAW NO V:

The Due Process Clause of the Fourteenth Amendment was violated when Defendant received a more harsher sentence in violation of Federal Due Process of Law and Article I, Section 16 of the Ohio Constitution.

PROPOSITION OF LAW NO VI:

Appellant received Ineffective Assistance of Appellant Counsel when she failed to mention judicial bias in violation of Article I, Section 16 of the Ohio Cohstitution[sic] and  Fourteenth and the Fifth Amendment of the United States Constitution, as well as in violation of Federal Due Process of Law.

PROPOSITION OF LAW NO VII:

The conviction was against the weight of the evidence and jurisdiction was inproperly[sic] conveyed to Cuyahoga County in violation of the Ohio Constitution, Section 16, Article I, and the United States Constitution, Fifth and Fourteenth Amendments as well  as in violation of Federal Due Process of Law.

PROPOSITION OF LAW NO VIII:

Appellate Court erred when if[sic] failed to conduct a hearing and considered the additional documents submitted by Appellant who's[sic] Trial Counsel intentionally failed to submit and knowingly lied in open court about submitting such documents.

*Id*. at 990-992.

Respondent had reported that as of the date of the filing of her Answer/Return of Writ, the Supreme Court of Ohio had not issued a decision on Petitioner's appeal.  ECF Dkt. #11 at 12.  The undersigned located Petitioner's case before the Supreme Court of Ohio on that

court's website and found that the Supreme Court of Ohio issued an entry on May 25, 2011 dismissing Petitioner's appeal as not involving any substantial constitutional question. *See* http://www.sconet.state.oh.us/tempx/187732.pdf.

### 12.  Delayed Application for Reconsideration

According to Respondent, on February 22, 2011, Petitioner pro se filed a delayed application for reconsideration in the Ohio appellate court. ECF Dkt. #11 at 12.  Respondent refers to a copy of the Ohio appellate court docket in Petitioner's case number CA-08-092512 which shows a docket entry dated February 22, 2011 indicating that Petitioner filed that pro se application for reconsideration in the court. *Id*., citing ECF Dkt. #11-4 at 228.  That docket further shows that the Ohio appellate court denied Petitioner's delayed application on March 10, 2011. *Id.*  Respondent states that she requested a copy of those documents but had not received them.  ECF Dkt. #11 at 13, fn. 3.

### III.  28 U.S.C. § 2254 PETITION

On October 27, 2010, Petitioner pro se executed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

> GROUND ONE:
>
> Mr. Barnes was denied a fair trial when the State was permitted to introduce testimony about prior bad acts not at issue in the indictment and when the jury was given no limiting instruction about other-acts evidence.  Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution
>
> GROUND TWO:
>
> A trial judge commits misconduct and undermines a defendant's constitutional right to Due Process and a fair trial by making inappropriate and prejudicial comments during trial and following the verdict.  Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution.
>
> GROUND THREE:
>
> The trial court violated Mr. Barnes' constitutional right to Due Process in sentencing him to a greater term of imprisonment based on his choice to go to trial following reversal of his conviction on a plea.  Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution.

-13-

GROUND FOUR:

Trial counsel provided Ineffective Assistance of Counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article i[sic] of the Ohio Constitution when she failed to request a limiting instruction for other-acts evidence and failed to object to the trial judge's prejudicial remarks and Mr. Barnes' vindictive sentence.    STRICKLAND V. WASHINGTON, 91984)[sic], 466 U.S. 669.

GROUND FIVE:

Appellant received Ineffective Assistance of Appellate Counsel when she failed to raise the issue of the incomplete transcript, the failure of the clerk to maintain the completeness, accuracy and integrity of the court files.  This was prejudiced to the Appellant to receive an effective review pursuant to Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

GROUND SIX:
Appellant received Ineffective Assistance of Appellate Counsel when she and trial counsel both failed to make the Preliminary Hearing part of the record for trial and appellate review.

GROUND SEVEN:

Appellant received Ineffective Assistance of Appellate Counsel when she failed to mention the Ineffective Assistance of Trial Counsel under the Federal Due Process of Law and under the Fifth and Fourteenth Amendments, United States Constitution, Section 16, Article I, Ohio Constitution.

GROUND EIGHT:

Appellant received Ineffective Assistance of Appellate Counsel when counsel failed to challenge the indictment, the manifest weight of evidence and the conveyance of improper jurisdiction to Cuyahoga County under the Federal Due Process of Law.

*Id.* at 2, 12.  On April 5, 2011, Respondent filed a Return of Writ.  ECF Dkt. #11.  On April 13, 2011, Respondent filed a supplement in the form of transcripts to state proceedings. ECF Dkt. #12.  On May 4, 2011, Petitioner filed a Traverse  ECF Dkt. #16.  On March 5, 2012, Petitioner filed a motion for the appointment of counsel.  ECF Dkt. #22.

**IV.     PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional

-14-

claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the

-16-

claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## **V**.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that

-18-

principle to a new context where it should apply.'

> D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

-19-

## VI.    ANALYSIS

### A.    Noncognizability-Grounds for Relief Numbers 1, 5, and 8

#### 1.    Ground for Relief Number 1

In Ground for Relief Number 1, Petitioner contends that he was denied a fair trial when the trial court allowed the State to present evidence of prior bad acts of domestic violence not at issue in the case and failed to give the jury a limiting instruction on how to consider the prior bad acts. ECF Dkt. #1 at 14.  Respondent contends that the issues in this Ground for Relief are not cognizable in federal habeas corpus because they are based upon violations of Ohio law and no clearly established United States Supreme Court precedent holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence or requires the state trial court to give a limiting instruction.  ECF Dkt. #11 at 18.

The undersigned recommends that the Court find that this Ground for Relief is not cognizable in federal habeas corpus.  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  "'[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.' " *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003) (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (other citations omitted)). A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted).

In this case, Petitioner cites to Rule 404(B) of the Ohio Rules of Evidence in asserting the inadmissibility of the prior acts. ECF Dkt. #1 at 14.  Such a claim is not cognizable on federal habeas review because the Sixth Circuit Court of Appeals has found that no clearly established United States Supreme Court precedent exists holding that the admission of prior bad acts evidence violates the

Due Process Clause. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003); *Paige v. Bradshaw*, No. 1:05CV2618, 2007 WL 4323785, at *12 (N.D.Ohio Apr. 4, 2007), unpublished.  In *Bugh*, the petitioner sought federal habeas relief, claiming that he was denied his constitutional right to due process because the state court admitted evidence concerning similar, uncharged acts of child molestation. Citing *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the *Bugh* Court held that there is no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bugh*, 329 F.3d at 512. In *Estelle*, the United States Supreme Court expressly declined to rule on the issue of "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." 502 U.S. at 75 n. 5. The *Bugh* Court explained that the Supreme Court's declination left the issue open and thus federal habeas courts cannot find that state court rulings allowing propensity use of other acts evidence are contrary to, or involve an objectively unreasonable application of, clearly established federal law. *Bugh*, 329 F.3d at 512; *see also Paige,* 2007 WL 4323785, at *12.

Thus, even if the trial court improperly admitted the prior bad acts evidence in the instant case, which the Ohio appellate court found that it had done, no "clearly established" due process right regarding the use of this evidence was violated because neither the Supreme Court nor the Sixth Circuit has made a ruling contrary to *Bugh*.  *See* ECF Dkt. #11-3 at 787-789; *Rice v. Moore*, 633 F.Supp.2d 541, 556 (S.D.Ohio 2008) (quoting *Sifuentes v. Prelesnik*, No. l:03cv637, 2006 WL 2347529, at *1 (W.D.Mich.Aug.11, 2006)); *see also Collier v. Lafler*, No. 09-1477, 419 Fed. App'x. 555, 558, 2011 WL 1211465 (6th Cir.2011), unpublished.

Moreover, Petitioner fails to show that the trial court errors were so egregious that fundamental fairness or a fundamentally fair trial was denied.  A state court's procedure or evidentiary error can warrant federal habeas corpus relief only when it "renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 543 U.S. 892, 125 S.Ct. 168, 160 L.Ed.2d 156 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69–70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

-21-

The Ohio appellate court in Petitioner's case found that the trial court's error in admitting the prior bad acts evidence was harmless beyond a reasonable doubt because the State offered other ample evidence to prove Petitioner's guilt. ECF Dkt. #11-3 at 788.

The undersigned agrees that Petitioner has failed to show a denial of fundamental fairness or denial of a fundamentally fair trial. As found by the Ohio appellate court, more than sufficient evidence existed upon which the jury could have found Petitioner guilty of felonious assault and kidnapping. ECF Dkt. #11-3 at 784-788. The evidence of any prior bad acts committed by Petitioner was not the critical factor in the case against Petitioner. The victim in this case testified at trial that Petitioner grabbed her, bit her face, arms and neck, tied her to his arm while he slept, and beat her and dragged her from room to room in their apartment. ECF Dkt. #12 at 1246-1248. She testified that she remained scarred from Petitioner's bites and sustained nerve damage to her arm and tissue damage to her cheek. *Id*. at 1248-1258. Photographs and documentation of the injuries were presented at trial and the nurse who participated in the victim's care at the hospital testified as to the injuries sustained. *Id*. at 1268-1272, 353-1355. The crux of the prosecution's case against Petitioner rested upon the victim's testimony, her injuries, and the testimony of the nurse involved in treating the victim and the police officers who investigated the case. Prior bad acts occurring between Petitioner and the victim were more than a minor detail in the prosecution's case. Accordingly, even if the admission of the prior bad acts was erroneous, and/or the failure to limit the jury in considering such evidence was erroneous, the undersigned recommends that the Court find that these errors were not so egregious that they resulted in an unreliable verdict or otherwise caused the denial of a fundamentally fair trial.

## 2.    Ground for Relief Number 5

In this ground for relief, Petitioner complains that a factual hearing was held by the trial court on September 17, 2003 and the docket sheet fails to show that this hearing occurred. ECF Dkt. #1 at 16. He asserts that he was in court on September 17, 2003 and September 18, 2003 and the complete transcripts of the September 17, 2003 hearing have been intentionally hidden because they are critical to showing the trial court's biased and prejudiced behavior. *Id.* Respondent asserts that

this ground for relief is noncognizable because the Ohio appellate court vacated the plea that he entered during this time frame which essentially mooted any error, claim of bias, or prejudice that may have occurred during the plea proceedings.  ECF Dkt. #11 at 143.

The undersigned recommends that the Court decline to address this ground for relief.  The undersigned had previously denied a motion for reconsideration filed by Petitioner asking the Court to reconsider denial of Petitioner's motion for an order seeking complete trial transcripts and exhibits relating to the September 17, 2003 hearing.  ECF Dkt. #21.  Petitioner had alleged that clerical errors as to whether plea proceedings occurred on September 17, 2003 or September 18, 2003 were not simple mistakes, but were "blatant attempts to conceal what actually took place during said proceedings."  ECF Dkt. #19 at 1576.  The undersigned indicated in his September 13, 2011 denial of the motion for reconsideration that Petitioner offered the same inadequate basis in the motion for reconsideration as presented in his original motion.  *Id*.  The undersigned also noted that Respondent had informed the Court that she had checked with the court reporters about additional transcripts and to inquire about audiotapes of criminal hearings and they reported that no additional transcripts existed and audiotapes were not used to record criminal proceedings in the Cuyahoga County Court of Common Pleas.  ECF Dkt. #20.

Moreover, the undersigned notes that Petitioner attached a copy of a September 17, 2003 proceeding where he entered guilty pleas to the charges relevant to the instant case.  ECF Dkt.#11-1 at 214.  Petitioner had attached this transcript to his motion for leave to withdraw his guilty plea in the trial court.  ECF Dkt. #11-1 at 214-252.  He alleged that the transcripts of this hearing, as well as other hearings, were altered, destroyed or hidden.  *Id.* at 213.  Respondent supplied the same transcript of the September 17, 2003 hearing.  ECF Dkt. #12 at 1047.  While the transcripts show a date of September 17, 2003, it is noted that the trial court's journal entry regarding the plea is dated September 18, 2003.  ECF Dkt. #11-1 at 188.  The docket entries following that entry appear to use that date, rather than September 17, 2003, the actual date that the transcript certifies that the plea hearing was held, as the date that Petitioner entered his pleas.  *See id.* at 264-265.  In at least one of his pleadings, his motion to withdraw his guilty plea in the trial court, Petitioner indicated that the

-23-

alleged involuntariness of his "pleas entered on September 18, 2003." ECF Dkt. #11-1 at 190.

With no evidence showing that alterations, concealment or other affirmative deceptive action occurred regarding the transcripts of proceedings surrounding his guilty plea, the undersigned recommends that the Court decline to address and/or find no merit to this ground for relief. In addition, the undersigned notes that to the extent applicable, the transcript of proceedings dated September 17, 2003 will be considered in determining Petitioner's other grounds for relief.

### 3. <u>Ground for Relief Number 8</u>

Petitioner identified his eighth ground for relief as the following:

> VIII. Appellant received Ineffective Assistance of Appellate Counsel when counsel failed to challenge the indictment, the manifest weight of evidence the conveyance of improper jurisdiction to Cuyahoga County under the Federal Due Process of Law.

ECF Dkt. #1 at 12. However, when addressing the basis of this ground for relief in his petition, Petitioner fails to discuss the ineffective assistance of appellate counsel at all. *Id.* at 17. Rather, he asserts that he "brings this claim base[] on the assertion that he was arrested on 6/22/03 for Domestic Violence **"only,"** incident number MD0301886." He goes on to discuss the fact that he was not arrested for any other charges or cases and he contends that the indictment against him was illegally obtained because he was arrested for domestic violence only on June 22, 2003 and the facts did not support a felonious assault charge or conviction. *Id.* at 17-18. He asserts that "[a]t best, it was nothing more than a Domestic Violence. At worst it was nothing more than Aggravated Assault." *Id.* at 18. Petitioner also challenges the kidnapping charge, indicating that it was handwritten into the indictment as an afterthought. *Id.* He also states that he was never arraigned in Berea Municipal Court for felonious assault. *Id.*

The undersigned recommends that the Court find that Petitioner's eighth ground for relief is not cognizable in federal habeas corpus. Petitioner labels this ground for relief as an ineffective assistance of appellate counsel issue but makes no argument on ineffectiveness at all. He merely presents claims that have no cognizability in this Court, as explained below.

Claims regarding an illegal indictment and improper jurisdiction in the Berea Municipal Court do not raise federal constitutional issues cognizable in this Court.  There is no federal constitutional right to indictment. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 687–88 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir.2006).  As a matter of due process, the charging document must "contain[s] the element of the offense intended to be charged, 'and sufficiently apprise the defendant of what he must be prepared to meet.' " *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir.2005) citing *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).  Moreover, the Ohio appellate court addressed this issue as a separate claim in ruling on Petitioner's motion for reopening under Rule 26(b) of the Ohio Rules of Appellate Procedure, finding no merit to the assertion since the record actually showed that Petitioner was indicted on felonious assault, kidnapping and rape.  ECF Dkt. #11-4 at 982.

Further, a claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

For these reasons, the Court should decline review of Petitioner's eighth ground for relief.

**B**.      **Procedural Default-Grounds for Relief Numbers 5-8**

Respondent also contends that Petitioner has procedurally defaulted the claims that he presents in Grounds for Relief Numbers 5, 6, 7, and 8.  ECF Dkt. #11 at 150-155.  However, the

undersigned recommends that the Court accept the following analysis of the merits of each of Petitioner's Grounds for Relief rather than an exhaustive and complex procedural default analysis on each of these Grounds for Relief. *See Hudson v. Jones*, 351 F.3d 212, 215-216 (6th Cir. 2003)(federal courts not required to address procedural default before ruling against petitioner on the merits)(citing cases); see also *Binder v. Steagall*, 198 F.3d 177, 178 (6th Cir. 1999)(court may proceed to analyzing merits of petitioner's grounds for relief assuming no procedural default or cause and prejudice to excuse the default where procedural default issue raises more questions than the case on the merits.).

### C.    Merits Analysis– Grounds for Relief Numbers 2,3, 4,6 and 7

The undersigned has already recommended that the Court find that Grounds for Relief Numbers 1, 5 and 8 are not cognizable in the preceding section of this Report and Recommendation. Accordingly, this part of the Report and Recommendation addresses the merits of Grounds for Relief Numbers 2, 3, 4, 6, and 7.

### 1.    Ground for Relief Number 2

In his second ground for relief, Petitioner alleges that the trial court committed misconduct and violated his constitutional right to due process and a fair trial by making inappropriate and prejudicial comments during trial and after the verdict. ECF Dkt. #1 at 12.  The Due Process Clause requires that a defendant be given a "fair trial in a fair tribunal," before a judge who has no actual bias against the defendant or interest in the outcome of a case. *See Bracy v. Gramley*, 520 U.S. 899, 904-905, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (citations omitted). "Neither judicial 'expressions of impatience, dissatisfaction, annoyance, and even anger,' nor judicial remarks 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases,' support a bias or partiality challenge." *Felder v. Ohio Adult Parole Authority*, No. 1:07CV1535, 2009 WL 3763067, at *13 (N.D. Ohio Nov. 9, 2009), quoting *Liteky v. United States*, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  Moreover, opinions formed by a judge on the basis of facts raised at trial or other events that occurred during proceedings do not constitute bias or partiality "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

-26-

However, where judicial bias infects the entire trial, it is not subject to harmless error review.  *Id.*
If a court determines that the trial court's actions resulted in a constitutional violation, the court must
overturn the state court decision. *Id.*

Petitioner cites to seventeen different parts of the trial transcript as support for his allegation
that the trial court made inappropriate and prejudicial comments.  ECF Dkt. #1 at 12.  The
undersigned will address each in turn.

The undersigned recommends that the Court find that the comments made by the trial court
on pages 4, 9, 10, and 17 of the trial transcript as cited by Petitioner do not amount to a violation of
due process because these comments were made outside of the presence of the jury.  ECF Dkt. #12
at 1088, 1093, 1101.

Petitioner next cites to page 140 of the trial transcript in which Petitioner interrupted the
victim's testimony in front of the jury by stating "That's ridiculous" and the trial court reprimanded
him.  ECF Dkt. #1 at 12, citing ECF Dkt. #12 at 1224.  Ms. Williams was testifying as to comments
made to her by Petitioner that scared her, including the statement that he would kill her and take her
body and that he loved her so much that he would keep her head in a freezer so that he could see her
everyday.  ECF Dkt. #12 at 1224.  Following this testimony, Petitioner stated, "That's ridiculous."
*Id.*  The trial court thereafter warned Petitioner in front of the jury that he did not want to hear
anymore comments from him.  *Id.*  Petitioner responded, "Yes, sir.  She lying."  *Id.*  The following
dialogue between Petitioner and the trial judge took place in front of the jury:

THE COURT:       I said I don't want anymore comments from you.  If you want
                 to testify you can take the stand.

THE DEFENDANT:   I would like to.

THE COURT:       If you don't - - you keep your mouth shut, Mr. Barnes - - Mr.
                 Barnes, do you understand me?

THE DEFENDANT:   Yes, sir.

| | |
|---|---|
| THE COURT: | You will keep your mouth shut or I will have you bound and gagged- - |
| THE DEFENDANT: | Yes. |
| THE COURT: | - - if there is one more word. |
| THE DEFENDANT: | So I can't talk to - - |
| THE COURT: | You will not be making comments during the course of this trial in front of the jury; do you hear me?  Do you hear me? |
| THE DEFENDANT: | Yes, sir. |

*Id.* at 1224-1225.  Petitioner complains that the trial court chastised him and insinuated that if he did not testify at trial, he had no defense.  ECF Dkt. #1 at 14.

The Ohio appellate court cited to Ohio caselaw regarding comments made by trial judges during trial and found that while the judge's comments were "perhaps unnecessarily harsh," they did not "affect the jury's assessment of the substantial evidence in the case or impede[d] defense counsel's performance."  ECF Dkt. #11-3 at 790-791.

The undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent.  The Court should find that the trial court's comments were somewhat harsh, but appeared to be based not on a deep-seated favoritism or antagonism, but rather on Petitioner's continuous refusal to keep silent during Ms. Williams' testimony and after admonishment by the trial court.  Moreover, the trial court's instructions to the jury at the end of the testimony negated any alleged bias or prejudice where the trial judge instructed:

> The defendant did not testify in this case.  It is not necessary that the defendant take the witness stand to testify in his own defense.  He has a constitutional right not to testify.  The fact that he did not testify must not be considered by you for any purpose whatsoever.

ECF Dkt. #12 at 1480.  The trial court further instructed the jury that:

> If I've said anything or done anything that gives you any indication that I have an opinion in this case, disregard it.

*Id.* at 1498.  For these reasons, the undersigned recommends that the Court find no merit to Petitioner's assertion of trial court misconduct and violation of his Due Process rights.

Petitioner also asserts that the trial court helped the prosecution authenticate photographic evidence when the prosecutor asked whether the photographs "adequately" depicted the crime scene and the trial judge corrected the prosecutor, stating that the correct question was whether the photographs "accurately" depicted the crime scene.  ECF Dkt. #1 at 12 and 15, citing Tr. at 167-168. The Ohio appellate court found that this minor comment did not affect the jury's determination, impede defense counsel's performance or improperly assist the State.  ECF Dkt. #11-3 at 791-792.

The undersigned's review of the trial transcript at the pages cited by Petitioner shows the trial court correcting the prosecution's question to Ms. Williams as to whether the photographs she showed were accurate as opposed to adequate depictions of the crime scene and the trial court's granting of the prosecution's motion to admit to publish the photographs.  ECF Dkt. #12 at 1251-1252.  The undersigned recommends that the Court find that this correction was not a violation of Petitioner's due process rights and showed no prejudice or bias on the part of the trial court. Moreover, the granting of the motion to admit to publish is certainly within the trial court's role in the trial.  Finally, the only other statement made by the trial court in the transcript pages cited by Petitioner was to say "thank you." *Id.* at 1261.  The undersigned is unsure as to what was happening in the courtroom at that time but both the trial judge and the prosecutor said "thank you."  *Id.* Perhaps, reading the rest of trial transcript page 168, (ECF Dkt. #12 at 1261), both the trial court and the prosecutor were handed the photographs that the prosecution thereafter proceeded to show to Ms. Williams.  *Id.*  In any case, there is no indication from this page of the transcript of a bias or prejudice that resulted in an unfair trial or violation of Petitioner's due process rights. He merely corrected the terminology used by the prosecutor.

Petitioner also cites to pages 200-202, 204-205, 208, 217-220, 223-224, 225-226, and 244-245 of the trial transcript in alleging that the trial court denied him a fair trial and due process of law

-29-

by interrupting his counsel's cross-examination of the victim.  ECF Dkt. #1 at 12, citing ECF Dkt. #12 at 1284-1286, 1288-1289, 1292, 1301-1304, 1307-1308, 1309-1310, 1328-1329.  The Ohio appellate court addressed this assertion and found that these interruptions by the trial court of defense counsel's cross-examination of the victim were not prejudicial and were within the trial court's obligation to control the court proceedings.  ECF Dkt. #11-3 at 792.

Upon review of the trial court's few interruptions of defense counsel's cross-examination of Ms. Williams, the undersigned recommends that the Court find that they were not violative of Petitioner's constitutional rights.  The court's interruptions were polite and respectful of defense counsel and primarily occurred either because the court was ruling on objections, because defense counsel cut off Ms. Williams' answer to her questions, or because defense counsel repeatedly asked Ms. Williams questions that she had already answered.  *See* ECF Dkt. #12 at 1283-1288.

Petitioner also cites to pages 359-360 of the trial transcript and asserts that the trial judge implied that he believed that Petitioner was guilty.  ECF Dkt. #1 at 15, citing ECF Dkt. #12 at 1445-1446.  The Ohio appellate court addressed this assertion, finding no misconduct in part because the comments made were outside of the presence of the jury.  ECF Dkt. #11-3 at 792-793.  The trial court denied defense counsel's Rule 29 motion for acquittal pursuant to the Ohio Rules of Criminal Procedure outside of the jury's presence and found "ample testimony" to deny the motion.  ECF Dkt. #12 at 1444-1445.  There is no misconduct or inappropriateness in the trial court's reasoning for denying the motions in finding that ample evidence was presented to proceed with the jury trial.  While the trial court's statement to defense counsel that she present relevant witnesses testifying as to relevant time period was a little terse, it was not inappropriate or expressive of a belief that Petitioner was guilty.  Moreover, it was not made in the presence of the jury.  *Id*. at 1445-1446.  Accordingly, the Court should find no merit to this assertion.

Petitioner also refers to pages 422-431 of the trial transcript which is a dialogue that occurred after the jury rendered its verdict but before the trial court sentenced Petitioner.  The trial court did inappropriately explain to the jury the following:

-30-

THE COURT:         We don't need to rub his face in it, but there is something very consistent about your case so let me tell the whole story to the jury.

                   First of all, we got a guy here with a serious criminal record. He's a convicted felon.  You committed a robbery, right, correct?  Terrence, I'm talking to you.

THE DEFENDANT:  No, I did not, sir.

THE COURT:         Let me just ask the question - -

THE DEFENDANT:  If you ain't gon' let me speak to to the the whole story.

THE COURT:         I asked you if you wanted to speak and you went on for five minutes.

THE DEFENDANT:  But you asked me a question.

THE COURT:         And then she spoke and I'm asking you a question.  Were you convicted on November 19th of 1992 for the crime of robbery in Cuyahoga County?

THE DEFENDANT:  Yes, I was.

THE COURT:         Okay.

THE DEFENDANT:  Now can I tell the whole story?

THE COURT:         Just a moment.  Did you go to prison for that?

THE DEFENDANT:  Yes, I did.

THE COURT:         For how long?

THE DEFENDANT:  I'm not quite sure right now.

THE COURT:         You don't know how long you went to prison for?

-31-

THE DEFENDANT:  No because - - -

THE COURT:  Really?

THE DEFENDANT:  Because there is circumstances involved in that case.

THE COURT:  I didn't ask for circumstances.  I want to know how long you went to prison for or to say in another way, let's look at it this way, how much time in your life have you spent in jail or in prison.

THE DEFENDANT:  I don't understand why you asking me that question.

THE COURT:  Because that's your prior record and we - -

THE DEFENDANT:  Because I didn't stipulate to no prior record either like she just said.  See, this is - - a lot of this legal stuff is too complex for a jury to understand.  I didn't stipulate to nothing much.  She kept telling me to be quiet.  I said I wanted to get up there and testify.  She said no.  I said - - if she wasn't gon' bring up evidence to show con- - it was nothing frivolous, it was her own handwriting, your Honor.

THE COURT:  Look, it's not my job to try your case or get involved between attorney and client.  This is the first I'm hearing about this, okay.  And I suspect – it's because you lost.

THE DEFENDANT:  No. You told me to be quiet.

THE COURT:  I asked you just after the state rested, I looked over at the defense table and I said, are you testifying or not.  The jury walked in the courtroom, I asked the defense to call your first witness.  You did not testify.

Look, we're not here to talk about Ruth or me or your former attorneys or all of the facts and circumstances in your prior robbery case, I don't care about it, okay.  The fact of the matter is this: There's one consistent theme with Terrence Barnes and that is that everything is somebody's else problem, that everything that happens to you is because of some vast conspiracy or because the witness is lying or there were facts and circumstances that the jury didn't hear or they somehow got it wrong or if only my attorney would have done this or only if the judge wasn't biased and prejudiced against me, and it's all ridiculous.

-32-

> I've heard the testimony in this case along with this jury and the uncontroverted testimony is that you assaulted this woman, that you kidnapped her and that you assaulted her. And after trying this particular case I am quite struck by the barbaric nature of your behavior. It's very unusual for a victim to be covered with human bite marks. The uncontroverted testimony is that you actually had pieces of Mary Williams' flesh in your teeth after the assault.

ECF Dkt. #12 at 1514-1518. These terse comments by the judge, even if inappropriate, had no impact upon the jury verdict since they occurred after the jury had rendered its verdict. The Ohio appellate court found the same and the Court should find that the Ohio appellate court did not render a decision that was contrary to or an unreasonable application of United States Supreme Court precedent.

Petitioner also cites to page 435 of the trial transcript in which the trial court and the prosecutor discuss an additional case that was pending against Petitioner at the time involving the alleged assault of another victim two weeks prior to the assault on Ms. Williams. ECF Dkt. #1 at 12; ECF Dkt. #12 at 1521. Again, this is a post-verdict discussion and had no impact on the jury's verdict. Accordingly, the undersigned recommends that the Court find no due process violation.

Finally, Petitioner cites to pages 440-442 in this Ground for Relief alleging judicial misconduct and inappropriate comments that impacted the trial and thereafter. ECF Dkt. #1; ECF Dkt. #12 at 1526-1528. This part of the record contains the statements made by the trial court in support of the sentence that he ordered Petitioner to serve and contains no improper comments. Consequently, the undersigned recommends that the Court find no merit to Petitioner's assertion.

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's second ground for relief.

### 2.     Ground for Relief Number 3

In his third ground for relief, Petitioner alleges that the trial court violated his due process rights when it sentenced him to a greater term of imprisonment based on his choice to go to trial rather than to plead guilty. ECF Dkt. #1 at 12. Petitioner avers that the trial court's sentence was vindictive. *Id*. at 15.

The Ohio appellate court addressed this issue, citing United States Supreme Court precedent and finding that many of the trial court's comments prior to trial, at sidebar and during sentencing were "clearly inappropriate." ECF Dkt. #11-3 at 799.  The appellate court found that these statements, coupled with the trial court's statement to Petitioner that he would go back to prison for a longer period of time if he were found guilty on any one of the charges, created a reasonable likelihood that the harsher sentence was motivated by vindictiveness.  *Id.*  However, the Ohio appellate court found that this presumption was rebutted because the crimes for which the jury convicted him were more serious and carried longer sentences and the trial court adequately explained the reasons for the sentence, including the barbaric nature of the crimes, the fact that Ms. Williams testified that she observed pieces of her own flesh in Petitioner's teeth, Petitioner's utter lack of remorse for the crimes, and the danger that this presented to society.  *Id.* at 800.  The appellate court thus found that the trial court justified the harsher sentence.  *Id.*

A court may constitutionally impose a greater sentence upon a defendant upon resentencing after succeeding on an appeal.  *North Carolina v. Peace*, 395 U.S. 711, 719-723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).  However, a court may not impose an increased sentence on remand based upon vindictiveness.  *Id.* at 725.  It is not the increase in the sentence but the retaliatory motive that violates a defendant's due process rights.  *Id.*  To protect against an increased sentence due to vindictive intent, the United States Supreme Court in *Pearce* held that a presumption of vindictiveness attached when a defendant's sentence was increased after a successful appeal.  *Id.* at 726.

In *Alabama v. Smith*, the United States Supreme Court curtailed the reach of the *Pearce* presumption of vindictiveness by holding that the presumption "[d]oes not apply in every case where a convicted defendant receives a higher sentence on retrial." 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), quoting *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986).   The *Smith* Court held that unless a "reasonable likelihood" existed that the increased sentence was the result of vindictiveness, the burden was on the defendant to show actual vindictiveness.  *Id.*  The *Smith* Court held that the presumption of vindictiveness does not apply

where a court sentences a defendant to a greater sentence at trial than the sentence previously imposed after a plea that was successfully vacated because "[e]ven when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." *Smith*, 490 U.S. at 801.  That Court found that a trial can show the trial court "a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation." *Id.*(citations omitted).  The Court also found that the factors that may have leaned toward leniency as consideration for the guilty plea no longer exist after a trial.  *Id.* Accordingly, when the presumption does not attach, "the burden remains upon the defendant to prove actual vindictiveness." *Id.* at 799-800.

The Ohio appellate court in the instant case correctly cited to *Smith* in reviewing Petitioner's assertion of vindictive sentencing.  ECF Dkt. #11-3 at 793.  The appellate court reviewed the relevant law and examined the trial court's conduct during the pretrial, trial, and sentencing.  *Id.* at 795-799. That court quoted numerous portions of the transcript, including portions where the trial court expressed its opinion about the ridiculousness of the appellate court's vacation of Petitioner's plea and various heated verbal exchanges between Petitioner and the court that took place during the trial and after the verdict.  *Id.* at 796-799.  The court further found that many of the trial court's comments prior to trial, during trial, at sidebar and at sentencing were "clearly inappropriate," and thus Petitioner had demonstrated a presumption that his harsher sentence was motivated by vindictiveness.  *Id.* at 799.  The appellate court held, however, that despite the many inappropriate comments, the trial court justified the harsher sentence after trial and overcame the presumption of vindictiveness by explaining the severity of Petitioner's crimes on the record, and noting Petitioner's utter lack of remorse, and the fact that Petitioner faced more serious charges at trial than those to which he plead guilty and he actually received a shorter sentence for felonious assault after trial than when he plead guilty.  *Id.* at 799-800.

The undersigned recommends that the Court find that the Ohio appellate court's decision was not contrary to or an unreasonable application of United States Supreme Court precedent.  Reviewing

-35-

the transcript, the trial court did in fact make quite a few comments which could be construed as vindictive.  During his remand hearing where the trial court appointed him new counsel and at sidebar during trial, the trial judge expressed his strong opinion that the appellate court was wrong and even ridiculous in reversing the case and vacating Petitioner's plea.  ECF Dkt. #12 at 1088, 1328-1329.  However, the trial court indicated to Petitioner at the remand hearing that "let's just say this, let bygones be bygones because guess what?  You get a new time at bat."  ECF Dkt. #12 at 1090.  The trial court informed Petitioner that his new trial included the fact that Petitioner was now indicted for crimes that resulted in a greater period of incarceration if he were found guilty.  *Id.*

A somewhat heated discussion also occurred between Petitioner and the trial court, outside of the jury, and the trial court ended the discussion by telling Petitioner:

> I'm going to sit here.  We'll give you a new attorney.  We'll give you a fair trial, and if you walk out of here not guilty, God bless you; but if you're guilty of any one of these charges, you're going to have a serious problem and you're going to go back to the institution, and in all likelihood you're going to go back for a far longer period of time than you're currently doing now.

ECF Dkt. #12 at 1093.  A heated discussion also occurred between the trial judge and Petitioner before sentencing, which is quoted above at pages 30-32 of this Report and Recommendation where the trial court explained to the jurors who remained for sentencing about Petitioner's criminal history and stated that the

> one consistent theme with Terrence Barnes and that is that everything is somebody else's problem, that everything that happens to you is because of some vast conspiracy or because the witness is lying or there were facts and circumstances that the jury didn't hear or they somehow got it wrong or if only my attorney would have done this or only if the judge wasn't biased and prejudiced against me, and it's all ridiculous.

ECF Dkt. #12 at 1516-1517.

The undersigned recommends that the Court find that the Ohio appellate court properly and reasonably concluded that while Petitioner had shown that some of the statements made by the trial judge showed a reasonable likelihood that the harsher sentence was motivated by vindictiveness, the trial court's objective logical explanation justifying the increased sentence overcame the likelihood

that the sentence was motivated by vindictiveness . ECF Dkt. #11- at 799-800.  As found by the Ohio appellate court, the jury convicted Petitioner of the more serious crime of kidnapping and felonious assault as opposed to the charges of gross sexual imposition and felonious assault to which he had entered a guilty plea. *Id.* at 800.  The trial court had explained that very fact to Petitioner prior to trial. ECF Dkt. #12 at 1090.  The Ohio appellate court further explained that the kidnapping charge carried a much harsher penalty than the gross sexual imposition charge as kidnapping was a first degree felony while gross sexual imposition was a fourth degree felony. *Id*.  Moreover, the Ohio appellate court cited to the objective logical reasons that the trial court gave on the record for his sentencing after the jury verdict.  The trial judge had explained that he was "struck by the barbaric nature" of the crimes and cited to Ms. Williams' testimony that she saw her own flesh in Petitioner's teeth during the assault and she was covered with human bite marks.  ECF Dkt. #12 at 1517-1518.  He also noted Petitioner's refusal to take responsibility for his actions and his utter lack of remorse, coupled with the nature of the assault, which the trial court found showed that Petitioner was a "dangerous and violent offender" which the trial court indicated warranted a six-year prison term on the felonious assault conviction. *Id.* at 1519.

As to the eight-year sentence that the trial court imposed for the kidnapping conviction, the court explained that the length of time that Petitioner held Ms. Williams was extensive, the testimony revealed that Petitioner had actually tied himself to the victim so that she could not escape while he slept, and he kidnapped her and kept her so that he could assault her by having sex with her.  ECF Dkt. #12 at 1526.  Finally, the trial court explained that the "barbaric, violent, sadistic nature of" the crimes resulted in consecutive sentences. *Id*. at 1527.

Based upon the trial judge's objective findings and the Ohio appellate court's discussion and review of those findings, the undersigned recommends that the Court find that the Ohio appellate court's decision was not contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court as to the allegation of vindictive sentencing.

**3**.    **Ground for Relief Numbers 4, 6, 7– Ineffective Assistance of Trial Counsel**

In his fourth ground for relief, Petitioner asserts that his trial counsel was ineffective for failing to request a limiting instruction regarding the other acts evidence that was presented at trial, failing to object to alleged prejudicial remarks made by the trial court and in failing to object to Petitioner's vindictive sentence. ECF Dkt. #1 at 12, 15. In Ground for Relief Number 6, Petitioner alleges that trial counsel was ineffective in failing to make the preliminary hearing transcript part of the record for trial review. *Id*. at 12, 16. In his seventh ground for relief, Petitioner contends that trial counsel was ineffective by representing conflicts of interest, failing to investigate police misconduct by Detective Funk, purposely withholding documents from Petitioner, refusing to present exhibits at trial and knowingly lying to the court about receiving such exhibits from Petitioner. *Id*. at 12, 16-17. Petitioner also presents ineffective assistance of appellate counsel claims in Grounds 6 and 7, but this section is limited to ineffectiveness of trial counsel claims only.

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago,* 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied,* 495 U.S. 961 (1990). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied,* 508 U.S. 975 (1993).

As to the issues raised in Petitioner's Ground for Relief Number 4, the Ohio appellate court found that counsel was not ineffective by failing to ask for a limiting instruction, citing caselaw indicating that a counsel may not request such an instruction as a tactical decision because it might call more attention to the evidence and reinforce prejudice for the jury. ECF Dkt. #11-3 at 801. The failure to request a limiting instruction does not, by itself, constitute ineffective assistance of counsel. *See Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir.1987). Federal courts have held that a decision by counsel not to request a limiting instruction can be a sound tactical decision not to emphasize the prior conviction before the jury. *See e.g., Ferguson v. Knight*, 809 F.2d 1239, 1243 (6th Cir.1987) (noting that "such instructions inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize"); *Stamps*, 834 F.2d 1269, 1276 (6th Cir.1987) (failure to request jury admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that ... counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them").

Here, the undersigned recommends that the Court find that Petitioner fails to show that his counsel's failure to request a limiting instruction was not sound trial strategy or that not requesting the instruction was so egregious that it requires federal habeas corpus relief. Moreover, even if counsel's decision to not request a limiting instruction rose to the level of the result of deficient performance, Petitioner fails to show a reasonable probability that but for counsel's failure to request the instruction, the outcome of his trial would have been different. As explained above, ample

-39-

evidence existed upon which the jury could have found Petitioner guilty of felonious assault and kidnapping. ECF Dkt. #11-3 at 784-788. The evidence of any prior bad acts committed by Petitioner was not the critical factor in the case against Petitioner. The victim in this case testified at trial that Petitioner grabbed her, bit her face, arms and neck, tied her to his arm while he slept, and beat her and dragged her from room to room in their apartment. ECF Dkt. #12 at 1246-1248. She testified that she remained scarred from Petitioner's bites and sustained nerve damage to her arm and tissue damage to her cheek. *Id.* at 1248-1258. Photographs and documentation of the injuries were presented at trial and the nurse who participated in the victim's care at the hospital testified as to the injuries sustained. *Id.* at 1268-1272, 353-1355. The crux of the prosecution's case against Petitioner rested upon the victim's testimony, her injuries, and the testimony of the nurse involved in treating the victim and the police officers who investigated the case. Accordingly, even if the failure to request a limiting instruction as to the other bad acts was deficient, the undersigned recommends that the Court find that this error did not undermine the reliability of the verdict or otherwise cause the outcome of the trial to be different.

The same two-prong *Strickland* analysis applies to Petitioner's claims of ineffective assistance of counsel in failing to object to the trial court's "prejudicial" remarks and in failing to object to the trial court's vindictive sentence. The undersigned has already recommended above that the decision of the jury was not impacted, prejudiced or influenced by the trial court's remarks, and the trial court's explanation of objective reasons for his sentence overcame any motivation for vindictiveness in sentencing. Accordingly, the undersigned recommends that the Court find that no prejudice emanated from counsel's failure to object to these situations.

In Ground for Relief Number 6, Petitioner alleges that trial counsel was ineffective by failing to make the preliminary hearing transcript part of the record for trial court review. ECF Dkt. #1 at 12. However, Petitioner fails to explain how the failure of counsel to present this transcript constitutes deficient performance and he fails to explain how or why presenting this transcript would have affected the outcome of his case. The undersigned therefore recommends that the Court find no merit to this Ground for Relief.

In Ground for Relief Number 7, Petitioner first complains that trial counsel was ineffective because she "actively represented conflicts of interest" when she failed to present a number of exhibits that he gave her for trial. ECF Dkt. #1 at 17. He contends that she knowingly lied to the court about the exhibits and refused to present them. *Id.* Petitioner also asserts that counsel was ineffective in failing to investigate the police misconduct of Detective Funk. *Id.* One of the exhibits Petitioner complains his counsel failed to present were prior police reports by the victim against him that she allegedly made that were false and one for which she spent three days in jail for lying to police. *Id.* at 17. While she did not proffer this report, Petitioner's counsel cross-examined Ms. Williams about her prior police reports against Petitioner and got Ms. Williams to admit that she spent three days in jail because she lied to the Parma Police regarding a prior complaint against Petitioner. ECF Dkt. #12 at 1282-1283. Defense counsel also brought out that despite testifying that she was afraid of Petitioner after the instant incident, she nevertheless visited or attempted to visit him while he was in jail. *Id.* at 1306.

After the verdict and before sentencing, Petitioner was asked if he wanted to say anything and he noted that he wanted to preserve issues for appeal and he raised his trial counsel's failure to present exhibits that he had given her to present at trial, among other issues. ECF Dkt. #12 at 1508. Petitioner's counsel admitted receiving exhibits from Petitioner and explained that it was her tactical strategy to not submit some exhibits and explained that it was her job as an officer of the court not to present frivolous exhibits. *Id.* at 1509-1510.

Petitioner has attached to his federal habeas corpus petition the exhibits that he alleges that he presented to trial counsel but she failed to submit to the court or present at trial. ECF Dkt. #1-1. However, Petitioner's counsel sought to admit many of these exhibits but was denied the ability to do so because she had altered some of the exhibits by writing on them and she failed to have them identified or authenticated by a witness. ECF Dkt. #12 at 1435-1438. Nevertheless, the State of Ohio moved to proffer the same exhibits in unaltered form, including the emergency room records, the discharge instructions, the diagnostic test results, and Ms. Williams' initial statement to police. Thus, while his own counsel was unable to get these exhibits admitted, they were nevertheless

admitted into evidence and reviewed by the jury and the jury had observed defense counsel's cross-examination of the witnesses relevant to these documents.  .

Petitioner raises an issue regarding whether Ms. Williams submitted to a rape kit at the hospital and alleges the ineffectiveness of his counsel in not proffering the emergency room records as to the rape kit.  ECF Dkt. #1 at 17.  However, defense counsel cross-examined the emergency room nurse about Ms. Williams' refusal to submit to a rape kit and the records were admitted by the State of Ohio which showed contradiction between the emergency room notes, which indicated that Ms. Williams declined a rape kit, and the generic discharge forms which indicated that Ms. Williams was examined for sexual assault.  ECF Dkt. #12 at 1376-1378.  The nurse testified that Ms. Williams did refuse a rape kit.  *Id.*  Moreover, as pointed out by his counsel before sentencing, Petitioner was found not guilty of rape by the jury, thus negating any prejudice that would have occurred even if it were deficient performance to fail to submit the records that Petitioner had about the emergency room visit.  *Id.* at 1510.

As to a failure to investigate misconduct by Detective Funk, Petitioner merely states that he threatened Ms. Williams with deportation to Iraq if she did not testify.  ECF Dkt. #16 at 1555.  He provides no support for such a statement.

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's ground for relief as to the ineffectiveness of trial counsel.

### 4.    Grounds for Relief 5-8–Ineffective Assistance of Appellate Counsel

A defendant is entitled to the effective assistance of counsel in his first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  The *Strickland* test for ineffective assistance of trial counsel also applies to claims of ineffective appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Mapes v. Coyle*, 171 F.3d 408 (6th Cir.1999). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts*, 469 U.S. at 396–97. " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence

of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Counsel's failure to raise an issue on appeal cannot be ineffective assistance unless there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). Further, counsel cannot be ineffective for a failure to raise an issue that lacks merit. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir.2003). Relevant considerations in analyzing performance of appellate counsel include whether the omitted issues were significant and obvious; whether there was arguably contrary authority on the omitted issues; and whether the omitted issues were clearly stronger than those presented. *Mapes*, 171 F.3d at 426–27.

Hence, in order to prevail on his ineffective assistance of appellate counsel claims, Petitioner must show that appellate counsel deficiently performed by failing to raise those claims on appeal and show that the deficient performance resulted in a reasonable probability that prejudiced the defense so as to render the trial unfair and the result unreliable. *Mapes*, 388 F.3d at 191, citing *Strickland*, 466 U.S. at 687. In order to establish deficient performance, a petitioner must show that counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In *Mapes*, 171 F.3d at 427- 428, the Sixth Circuit Court of Appeals listed eleven questions as matters to be considered in determining whether an attorney on direct appeal acted in accordance with the objective standard of reasonableness in reviewing the deficient performance prong of the ineffective assistance of appellate counsel.

In order to establish the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *Id.; Williams v. Taylor*, 529 U.S. 362, 390-391 (2000).

Moreover, it must be remembered that appellate counsel is not ineffective if he or she fails to raise every nonfrivolous claim on direct appeal. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308,

77 L.Ed.2d 987 (1983); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986).  When the state court has rejected an ineffective-assistance-of-counsel claim on the merits, a federal court can grant federal habeas relief only if the state court unreasonably applied this standard. *Knowles v. Mirzayance*, 556 U.S. 111, 122–23 (2009) (noting the "doubly deferential judicial review" that applies to such claims).

In Grounds for Relief 5 through 8, Petitioner alleges various ineffective assistance of appellate counsel claims.  ECF Dkt. #1 at 12, 16-18.  Although the undersigned has recommended that the Court find Grounds for Relief Numbers 5 and 8 noncognizable, the undersigned provides additional analysis under the umbrella of ineffective assistance of appellate counsel as further support to deny these Grounds for Relief.  Petitioner's fifth ground for relief asserts appellate counsel ineffectiveness in failing to raise the issue of incomplete transcripts of hearings for which Petitioner alleges occurred but for which no records were made. *Id.* at 12, 16.  In his sixth ground for relief, Petitioner asserts that appellate counsel was ineffective because she failed to make the preliminary hearing part of the appellate record. *Id.*

As explained above at pages 22-23 of this Report and Recommendation, Petitioner provides no support for his assertion that incomplete transcripts exist nor does he provide any evidence showing that alterations, concealment or other affirmative deceptive action occurred regarding the transcripts of proceedings surrounding his guilty plea.  In addition, Respondent had checked with the court reporters and they determined that no such transcripts existed.  Accordingly, the undersigned recommends that the Court find no deficient performance on the part of appellate counsel in failing to present this assertion.

As to Ground for Relief Number 6, Petitioner fails to explain how the failure of either trial counsel or appellate counsel to present the preliminary hearing transcript constitutes deficient performance or how presenting this transcript would have affected the outcome of his case or appeal.  The undersigned therefore recommends that the Court find no merit to this Ground for Relief.

In Ground for Relief Number 7, Petitioner contends that appellate counsel was ineffective in failing to raise the ineffectiveness of trial counsel as to a number of issues trial counsel allegedly failed to raise and exhibits that she failed to present at trial. ECF Dkt. #1 at 12.  However, since the undersigned has recommended that the Court find that Petitioner did not receive the ineffective assistance of trial counsel, the undersigned also recommends that the Court find that appellate counsel was not deficient in failing to raise issues of ineffective assistance of trial counsel.

Finally, in Ground for Relief Number 8 alleges the ineffectiveness of appellate counsel in failing to challenge the indictment, failing to assert a manifest weight of the evidence claim and in failing to challenge the conveyance of improper jurisdiction to Cuyahoga County.  *Id*. at 12, 16-17. For the following reasons, the undersigned recommends that the Court find no merit to the indictment and improper jurisdiction claims and decline to address the manifest weight of the evidence part of this Ground.

The Ohio appellate court addressed the indictment and improper conveyance issues, holding that the record from Petitioner's municipal court case reflected that complaints were filed in the municipal court case charging him with felonious assault, kidnapping and rape, while the original papers in his instant case charged him with felonious assault, kidnapping, rape and domestic violence. ECF Dkt. #11-4 at 982.  Thus, the appellate court held, the record failed to support Petitioner's assertion that the "illegally obtained indictment" in the instant case was inconsistent with the basis of his arrest, which he asserts was for domestic violence only.  *Id.*

Based upon a review of the record, the undersigned recommends that the Court find that the appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent as Petitioner failed to establish appellate counsel's deficient performance or resulting prejudice since it appeared that he was properly indicted and no issue of improper conveyance existed.

As to Petitioner's assertion of the ineffectiveness of appellate counsel in failing to raise a manifest weight of the evidence argument, the Ohio appellate court found that Petitioner had not met either of the *Strickland* prongs because he provided no review of the elements of the crimes of which he was convicted in order to show that his convictions were against the manifest weight of the

evidence.  ECF Dkt. #11-4 at 983.  Moreover, the appellate court found that Petitioner failed to show any resulting prejudice even if deficient performance were found.  The court found that Petitioner's mere assertion that his convictions were against the manifest weight of the evidence was insufficient to establish an issue as to whether appellate counsel was ineffective in failing to appeal the issue.  *Id.*  The Ohio appellate court cited to Rule 26(B)(5) of the Ohio Rules of Appellate Procedure and to state appellate caselaw in support of its holding.  *Id.*

Similarly here, Petitioner presents no analysis for his assertion of ineffective assistance of appellate counsel in failing to raise a manifest weight of the evidence argument and he provides no support for such a claim.  Thus, the undersigned recommends that the Court dismiss this ground for relief not only because the underlying claim is not cognizable in federal habeas corpus review, as found above, but also because Petitioner provides no argument or support for an assertion of ineffectiveness of appellate counsel in failing to raise such a claim.

## VII.  MOTION FOR APPOINTMENT OF COUNSEL (ECF DKT. #22)

Since the undersigned recommends that the Court dismiss Petitioner's instant federal habeas corpus petition in its entirety, the undersigned DENIES Petitioner's motion for the appointment of counsel.  ECF Dkt. #22.

## VIII.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: June 7, 2012                            */s/ George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).